## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ERNESTO MARTINEZ,

        Plaintiff,

vs.                                    No. CIV 00-1567 LCS/RLP

WILLIAM J. HENDERSON,
POSTMASTER GENERAL,
UNITED STATES POSTAL SERVICE,

        Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** came before the Court on Defendant's Motion for Summary Judgment (Doc. 40), filed May 1, 2002. The United States Magistrate Judge, acting upon consent and designation pursuant 28 U.S.C. § 636(c), and having considered the briefs, submissions, relevant law, and being otherwise fully advised, finds that this Motion is well-taken and should be **GRANTED**.

## I.    Administrative and Factual Background.

Plaintiff alleges that Defendants retaliated against him in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e. The following facts concerning Plaintiff's claims are either uncontroverted or, if controverted, are construed in a light most favorable to Plaintiff. *See Clanton v. Cooper*, 129 F. 3d 1147, 1150 (10th Cir.1997). Plaintiff was employed as a letter carrier by the United States Postal Service in Roswell, New Mexico. (Compl. ¶ 9.) In August 1998, Defendant removed Plaintiff from his employment. (Tomas Decl. ¶ 5, Def. Ex. 5.) Plaintiff filed a grievance protesting his removal. (Def. Uncontroverted Facts ¶ 2.) On August 24, 1998, filed an EEO charge regarding his removal. (Def. Uncontroverted Facts ¶ 3; Pl. Depo. at 166-168; 180-183, Def. Ex. 1.) Plaintiff returned to work on March 20, 1999, pursuant to a settlement agreement

on his grievance.[1]  (Def. Uncontroverted Facts ¶ 4; Tomas Decl. ¶ 5, Def. Ex. 5.)  On April 8, 1999,

Defendant's EEO Western Area Office issued a Final Agency Decision in favor of Defendant on

Plaintiff's August 1998 EEO charge.  (Pl. Depo. at 177-180; Pl. Depo. Ex. 9, Def. Ex. 1.)  Plaintiff

did not appeal the denial of his August 1998 EEO charge.  (Def. Uncontroverted Fact ¶ 6; Pl. Depo.

at 177, Def. Ex. 1.)

On May 21, 1999 Plaintiff filed an informal EEO complaint, and on July 29, 1999 filed a

formal complaint with Defendant's EEO.  (Compl. ¶ 4.)  Plaintiff charged that supervisors Robert

Rymer and Cecil Tomas retaliated against him in May 1999 by issuing letters of warning and

modifying his delivery route, and for continuous "harassment, intimidation and discrimination" by all

management personnel since 1981. (Pl. Depo. Ex. 13, Def. Ex. 1.)  On August 27, 1999, Defendant's

EEO Compliance and Appeals Office issued a final decision dismissing the claim for harassment,

intimidation and discrimination by all management personnel since 1981, on the ground that the claim

was untimely and did not meet the criteria for a continuing violation.  (Pl. Depo. Ex. 14, Def. Ex. 1.)

Plaintiff did not appeal the dismissal of the untimely portion of his claim.  On August 7, 2000,

Defendant's EEO Compliance and Appeals Office issued a final decision finding no retaliation as to

the allegations against Rymer and Tomas. (Compl. ¶ 5.)

On November 6, 2000, Plaintiff filed his Complaint in this Court alleging that Defendant

engaged in unlawful retaliation under Title VII, by modifying his delivery route to make it more

difficult to carry, assigning a personal monitor to watch his every move, issuing two letters of warning

on May 3, 1999 that falsely accused him of running a stop sign and engaging in time wasting

---

[1] Plaintiff disputes the materiality of Defendant's Uncontroverted Fact ¶ 4 as to the underlying charges and his fourteen-day suspension, but does not dispute that he returned to work on March 20, 1999 pursuant to a settlement on his grievance.

practices, subjecting him to mail counting and street observations not followed with other employees, accusing him of unsafe work practices, accusing him of violating postal regulations, prohibiting him from entering the workplace on his days off, preventing him from taking breaks while casing mail, prohibiting him from making schedule changes, prohibiting him from making and receiving phone calls while at work, intimidating, ridiculing and harassing him, issuing a letter of warning on April 27, 2000 for working in an unsafe manner, requiring him to produce documentation for any sick leave requested in 2000, and issuing a letter of warning on October 6, 2000 that falsely accused him of unsafe work practices. Plaintiff further alleges that other employees were not given letters of warning or disciplined for the same conduct, and that from the date of his return to work to the date of the Complaint, Defendant's management personnel subjected Plaintiff to a campaign of retaliation and intimidation aimed at discouraging Plaintiff to the point that he would quit his job. (Compl. ¶¶ 15-24.) Defendant moves for summary judgment on each allegation contained in the Complaint.

Plaintiff avers that on June 13, 1997 and August 1, 1997, Tomas and Harold Jones prevented him from entering the workplace on his days off. (Def. Uncontroverted Fact, ¶ 44; Pl. Ans. to Interrogatory No. 3.) As to the break prohibition, Plaintiff stated in his interrogatory answers that occasionally Harold Jones, Cleo Maner and Cecil Tomas prohibited him from taking breaks while casing mail, but is unable to recall specific dates. (Def. Uncontroverted Fact, ¶ 47; Pl. Ans. to Interrogatory No. 4.) Plaintiff testified that he does not know if Tomas prevented him from taking breaks, and if so when. (Def. Uncontroverted Fact, ¶ 48; Pl. Depo. at 73.) Maner retired from the Roswell Post Office in 1994, and Harold Jones retired in June 1998. (Def. Uncontroverted Fact, ¶ 49; Tomas Decl.¶ 18.)

With respect to the denial of requests for schedule changes, Plaintiff specified that Daniel

Ortega denied his request for a schedule change on March 31, 1999. (Def. Uncontroverted Fact, ¶ 51; Pl. Suppl. Ans. to Interrogatory No. 5.) Defendant does not have any documentation denying Plaintiff's request for a schedule change on March 31, 1999. (Def. Uncontroverted Fact, ¶ 56; Tomas Decl.¶ 16.) A postal employee requesting a schedule change is required to submit a PS Form 3189 to his supervisor in advance of the date of the requested change. (Def. Uncontroverted Fact, ¶ 55; Tomas Decl.¶ 16.) The supervisor either approves or denies the request. (Def. Uncontroverted Fact, ¶ 55.) All requests are kept on file whether granted or denied. (Def. Uncontroverted Fact, ¶ 55; Tomas Decl.¶ 16.) On March 29, 1999, Ortega approved a schedule change request for Plaintiff for the period March 30, 1999, through April 2, 1999. (Def. Uncontroverted Fact, ¶ 53.) On May 25, 1999, Ortega approved a schedule change request for Plaintiff for the period June 1, 1999 through June 3, 1999. (*Id*.) On August 31, 1999, Tomas approved a schedule change request for Plaintiff for the period March 30, 1999 through April 2, 1999. (Def. Uncontroverted Fact, ¶ 53; Tomas Decl.¶ 16.)

As for the phone calls, Plaintiff states that on August 22, 1999, and on April 12, 2000, Tomas prohibited him from making or receiving phone calls while at work. (Def. Uncontroverted Fact, ¶ 58; Pl. Ans. to Interrogatory No. 7.) However, Plaintiff testified that he had no recollection of these incidents and does not know if he was prevented from using the phone. (Def. Uncontroverted Fact, ¶ 59; Pl. Depo. at 78-80.) Plaintiff did not work on August 22, 1999 or April 12, 2000. (Def. Uncontroverted Fact, ¶ 60; Tomas Decl.¶ 15.) Tomas does not recall preventing Plaintiff from making or receiving phone calls. ( *Id*.)

With respect to the sick leave documentation, in Plaintiff stated in his interrogatory answers that he was required to produce documentation for sick leave requests on March 8, 1995, and

November 31, 1997 [sic]. (Def. Uncontroverted Fact, ¶ 64; Pl. Ans. to Interrogatory No. 8.) In response to Defendant's interrogatory, Plaintiff averred that he was accused of unsafe driving practices on April 2, 1999 (driving in an unsafe manner), May 4, 1999 (driving in an unsafe manner), June 22, 2000 (curbing wheels too hard), September 28, 2000 (turn signals, jumping curbs). (Pl. Ans to Interrogatory No. 1.) On May 4, 1999, Supervisor Daniel Ortega observed Plaintiff while Plaintiff delivered his route and filled out a PS Form 4584. (Ortega Decl., Ex. A.) On June 22, 2000, Supervisor John Taylor observed Plaintiff while Plaintiff delivered his route and prepared a PS Form 4584. (Taylor Decl., Ex. A.)

Plaintiff states that he was accused of violating agency regulations when he was informed that mail had been mis-delivered on his route on May 29, 1999, May 30, 1999, and August 31, 1999. (Pl. Ans. to Interrogatory No. 2.) Plaintiff conceded in his deposition that mis-delivery is not an unusual event and that informing a carrier that an item of mail was mis-delivered was not a "bad thing." (Pl. Depo. at 40.)

Between May and August 2000, Mary Nuñez, a Mail Processing Supervisor, was asked by Robert Pantoja or Tomas to observe Plaintiff casing his mail on one specific occasion because Plaintiff was not completing his office work within the time allocated. (Def. Uncontroverted Fact, ¶ 19; Nuñez Depo. at 8-9 and 19.) In 2000, Nuñez was unaware that Plaintiff had filed EEO complaints in 1998 and 1999. (Def. Uncontroverted Fact, ¶ 22; Nuñez Decl. ¶ 3.)

After his March 1999 return to work, Plaintiff's mail was counted and he was observed on the street while delivering mail. (Def. Uncontroverted Fact, ¶ 14; Tomas Decl. ¶ 12.) Defendant conducts mail counts to achieve and maintain daily workloads for delivery units and routes and for making adjustments when necessary. (Def. Uncontroverted Fact, ¶ 32; Tomas Decl. ¶ 8.) Defendant

performs street observations for safety purposes. (Def. Uncontroverted Fact, ¶ 29; Tomas Decl. ¶ 11.) Mail counts and street observations are not imposed as discipline. (Def. Uncontroverted Facts, ¶¶ 31, 33; Tomas Decl. ¶¶ 10, 11.) Defendant requires that all carriers be observed at least twice every year. (Def. Uncontroverted Fact, ¶ 30; Tomas Decl. ¶ 11.) Plaintiff contends that Defendant's Uncontroverted Fact, ¶ 30, that Defendant requires that all carriers undergo street observations at least twice annually is not material, but does not dispute the accuracy of the statement. (Pl. Response, ¶ 7.)

Based on the mail counts and street observations, Tomas modified Plaintiff's route because it was slightly under seven hours, well below Defendant's required eight hour workday. (Def. Uncontroverted Facts, ¶ 14; Tomas Decl. ¶¶ 12.) Plaintiff was assigned a portion of another carrier's territory to balance out the workload, because the other carrier's route was over eight hours. (Def. Uncontroverted Fact, ¶ 15; Pl. Ex. 13; Tomas Decl. ¶ 12.) After Plaintiff was observed delivering his route, Tomas concluded that "park and loop" was the most efficient way of delivering mail to the Crescent and King Drive area, and required Plaintiff to park his vehicle and deliver the mail on foot. (Def. Uncontroverted Fact, ¶ 16; Tomas Decl. ¶ 12.) In April 1999, when Tomas modified Plaintiff's delivery route, Tomas was unaware that Plaintiff had filed an EEO charge in August 1998. (Def. Uncontroverted Fact, ¶ 18; Tomas Decl. ¶ 5.)

On May 3, 1999, Rymer issued two letters of warning to Plaintiff; one for running a stop sign and one for engaging in time wasting practices. (Def. Uncontroverted Facts, ¶¶ 23, 25; Rymer Depo. at 86.) Plaintiff admits that he ran a stop sign, but disputes the location of the infraction. (Pl. Depo. at 195.) The time wasting practices warning was based on events that occurred on April 2, 1999, when Plaintiff called the office and stated that he was unable to deliver his route in eight hours, even

6

though he was about four feet under reference volume and had left the annex early that morning. (Rymer Depo. Ex. 6.) Rymer recounted in the warning that Plaintiff twice drove away from his route to call for instructions that had been clearly given to him, and Rymer observed that Plaintiff was trying to prolong his work by walking around his vehicle, opening all the doors, unnecessarily moving a tray of mail, and unnecessarily locking the doors to his vehicle every time he got out. (*Id.*) The May 3, 1999 letter of warning concerning time wasting practices was settled and removed from Plaintiff's employment record on May 27, 1999. (Pl. Depo. at 201.)

On June 1, 2000, Tomas issued Plaintiff a letter of warning for working in an unsafe manner on April 27, 2000. (Def. Uncontroverted Fact, ¶ 62; Pl. Ex. 12.) Tomas stated in the letter that on April 27, 2000, Plaintiff picked up a tray of mail and it started to slip from his hands. Instead of letting it fall, Plaintiff tried to grasp the tray in violation of safety procedures and injured himself in the process. (Pl. Ex. 12.)

On September 28, 2000, Daniel Ortega sent a memo to Pantoja, recounting that on that day he had observed Plaintiff engaging in unsafe driving practices such as not using turn signals, running up over a curb, backing up towards Ortega's vehicle and almost hitting it. (Pl. Ex. 4.) When Ortega tried to bring the unsafe practices to Plaintiff's attention, Plaintiff called Ortega a liar, stated he was not going to talk to Ortega and walked away. (Pl. Exs. 4 and 5.) On October 6, 2000, Ortega issued Plaintiff a letter of warning for unsafe driving practices and suspended him for fourteen days. (Def. Uncontroverted Fact, ¶ 65; Pl. Ex. 5.) Plaintiff filed a grievance protesting the letter of warning and suspension. (Pl. Ex. 6.) The grievance was denied on November 16, 2000. (*Id.*) Ortega notified Plaintiff on December 12, 2000 that Plaintiff would serve the suspension from December 23, 2000 to January 5, 2001. (*Id.*) The suspension was a "paper suspension" in that it did not result in loss

of pay or time off work, but did count as progressive discipline. (*Id.*)  On August 18, 2001, an arbitrator reversed and removed the suspension, finding that the Ortega's charges were not credible. (Pl. Ex. 7.)

On May 1, 2002, Defendant filed a Motion for Summary Judgment, arguing that Plaintiff has failed to make a prima facie case of retaliation and/or has failed to demonstrate pretext as to each retaliatory action alleged in the Complaint.  Plaintiff responded with additional factual allegations, and asserts that he has established a prima facie case and pretext. In his additional factual allegations, Plaintiff alleges that on September 28, 2000, Daniel Ortega accused Plaintiff of unsafe driving practices, and suspended Plaintiff for fourteen days.  (Pl.'s Resp. to Mot. for Summ. J. at 3.)  An arbitrator subsequently found that Ortega's version of events was not credible.  (Pl.'s Resp. to Mot. for Summ. J. at 3-4; Pl. Ex. 7.)  Plaintiff alleges that on April 27, 2001, Tomas charged Plaintiff with insubordination, and that on April 30, 2001, Tomas recommended that Plaintiff be discharged from his employment.  (Pl.'s Resp. to Mot. for Summ. J. at 4-5.)  Plaintiff claims that Postmaster Davidson concurred with the level of discipline without conducting any investigation. (Pl.'s Resp. to Mot. for Summ. J. at 5.)   Plaintiff alleges that the only witness who substantiated Tomas' version of events on April 27, 2001 was Rymer, who was the same supervisor who initiated the first removal of Plaintiff from his employment.  (Pl.'s Resp. to Mot. for Summ. J. at 6.)

Defendant argues in his Reply that amendment of the Complaint to include Plaintiff's removal from employment would be futile because Plaintiff failed to exhaust administrative remedies with respect to his termination.   Defendant also argues that Plaintiff failed to give fair notice that he is pursuing a claim based on his removal.  Defendant points out that Plaintiff circumvented the purposes of FED.R.CIV.P. 15 and 16 by failing to file a motion to amend his complaint before October 7, 2001,

the deadline set by the Court for amendments to the pleadings. Defendant argues that allowing

Plaintiff to amend at this stage of the proceedings would be highly prejudicial to Defendant because

no discovery was conducted on the new claim. If the amendment were allowed, Defendant states that

additional discovery would be needed to allow Defendant to re-depose Plaintiff and to depose three

witnesses not previously identified by Plaintiff.

Plaintiff has not moved to amend the Complaint. On July 3, 2001, the Initial Pretrial Report

(IPTR) was filed. (Doc. 16.) The IPTR, submitted by the parties and signed by the Court, controls

the subsequent course of this action. FED.R.CIV.P. 16(c). Under the heading "Plaintiff's

Contentions" Plaintiff stated:

> Plaintiff contends since the time or [sic] his reinstatement in March
> 1999 to the present date, He [sic] has been subjected to a pattern of
> retaliatory employment actions for having engaged in protected
> activity under Title VII of the Civil Rights Act. Just as the proposed
> termination was without any basis in fact or postal regulation, the
> numerous adverse employment actions taken against Mr. Martinez
> serve as pretext for a retaliatory campaign orchestrated by postal
> supervisors for the sole purpose of forcing Martinez to resign his job.
> There are no legitimate, non-discriminatory business reasons for the
> actions of Defendant and Martinez has been treated differently from
> other postal service workers for an extended period of time. These
> actions are in retaliation or [sic] Mr. Martinez having exercised his
> civil rights in filing EEO complaints against his supervisors. As a
> result of these retaliatory actions, Martinez has suffered damages in
> the form of lost wages and other compensatory damages.

Initial Pretrial Report (Doc. 16) at 2.

## II.     Standard for Summary Judgment.

A motion for summary judgment may be granted only when "there is no genuine issue as to

any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV.

P. 56(c). "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact.' " *Munoz v. St. Mary Corwin Hosp.*, 221 F. 3d 1160, 1164 (10th Cir. 2000) (quoting Rule 56(c)). When applying this standard, the Court examines the record and makes all reasonable inferences in the light most favorable to the non-moving party. *Id.*

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). When the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying "a lack of evidence for the non movant on an essential element of the non movant's claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 671 (10th Cir. 1998). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F. 3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Munoz,* 221 F. 3d at 1164. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the

party opposing the motion. *See Bullington v. United Air Lines*, Inc., 186 F. 3d 1301, 1313 (10th Cir. 1999). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* The district court may only consider admissible evidence submitted to defeat summary judgment. *Starr v. Pearle Vision, Inc.*, 54 F. 3d 1548, 1555 (10th Cir. 1995); *Pastran v. K-Mart Corp.*, 210 F. 3d 1201, 1203 n. 1 (10th Cir. 2000).

## III.   Analysis

Plaintiff claims that Defendant retaliated against him in his employment because he filed administrative charges of discrimination and retaliation with Defendant's EEO office. Title VII prohibits retaliation against employees for asserting their rights under Title VII, providing that "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a).

## A.   Whether Plaintiff Exhausted Administrative Remedies with Respect to the October 6, 2000 Letter of Warning and the April 2001 Removal from Employment.

Defendant argues that Plaintiff failed to exhaust administrative remedies as to the October 6, 2000 letter of warning and April 27, 2001 removal from employment. Plaintiff states in his Response to Defendant's Motion for Summary Judgment that his April 27, 2001, removal from employment is included in the instant action. However, Plaintiff did not allege the removal from employment claim in his Complaint and never moved to amend his Complaint.

Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under Title VII. *Woodman v. Runyon*, 132 F. 3d 1330, 1341 (10th Cir.1997); *Seymore v. Shawver & Sons, Inc.*, 111 F. 3d 794, 799 (10th Cir. 1997); *Jones v. Runyon*, 91 F. 3d 1398, 1399 (10th Cir. 1996). The purposes of the exhaustion requirement are to provide notice of the alleged violation to the charged party, and to provide the EEOC with the opportunity to conciliate the claim. *Seymore*, 111 F. 3d at 799. Actions committed in retaliation for filing an administrative discrimination complaint are reasonably related to the complaint, obviating the need for a second charge. *Jones v. Denver Post Corp.*, 203 F.3d 748, 755 (10th Cir.2000). "When an employee seeks judicial relief for incidents not listed in his original charge to the EEOC, the judicial complaint nevertheless may encompass any discrimination like or reasonably related to the allegations of the EEOC charge, including new acts occurring during the pendency of the charge before the EEOC." *Ingels v. Thiokol Corp.*, 42 F. 3d 616, 625 (10th Cir. 1994) (*quoting Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 864 F. 2d 680, 682 (10th Cir.1988) (internal quotation omitted). A separate charge is not required with respect to claims reasonably related to those set forth in the initial charge or for new acts occurring during the pendency of the administrative process. *Seymore*, 111 F. 3d at 799.

On May 21, 1999 Plaintiff filed an informal complaint with Defendant's EEO, and on July 29, 1999 filed a formal complaint with Defendant's EEO, charging that Rymer retaliated against him in May 1999 by issuing a letter of warning, that Tomas retaliated against him in May 1999 by modifying his delivery route, and for continuous "harassment, intimidation and discrimination" by all management personnel since 1981. (Compl. ¶ 4; Pl. Depo. Ex. 13, Def. Ex. 1.) On August 7, 2000, the EEO Compliance and Appeals Office issued a final decision finding no retaliation as to the allegations against Rymer and Tomas. (Compl. ¶ 5.)

Plaintiff's July 29, 1999 EEO charge was based on Rymer issuing the May 3, 1999 letters of warning and Tomas' modification of his route. (Pl. Depo. Ex. 13.) The charge remained pending until August 7, 2000. The October 6, 2000 letter of warning was issued by Ortega based on unsafe driving practices that occurred on September 28, 2000. Plaintiff's second removal from employment was based on a confrontation with Tomas on April 27, 2001. The October 6, 2000 letter of warning and the Plaintiff's April 2001 removal were not like or reasonably related to the allegations of his EEO charge and did not occur during the pendency of the administrative charge. Under these circumstances, Plaintiff has failed to exhaust administrative remedies with respect to these claims. *Ingels v. Thiokol Corp.*, 42 F. 3d 616, 625. Defendant is entitled to summary judgment on Plaintiff's claim as it related to the October 6, 2000 letter of warning and the April 27, 2001 removal from employment.[2]

Although not argued by Defendant, the Court notes that several aspects of retaliatory treatment occurred before the filing of Plaintiff's first EEO charge. Where a retaliatory act occurs prior to the filing of a charge and the employee fails to allege the retaliatory act in the subsequent

---

[2] Defendant argues that even if Plaintiff had exhausted administrative remedies with respect to his claim on the October 6, 2000 letter of warning, Plaintiff would be unable to establish the causation element of his prima facie case. I agree. As more fully discussed infra with respect to the other aspects of Plaintiff's claim, Plaintiff must demonstrate a close temporal proximity or additional evidence such as a pattern of retaliatory conduct to show causation. More than a year elapsed between the protected activity and the October 6, 2000 letter of warning. Plaintiff submitted no compelling additional evidence of causation. Because there was no close temporal proximity and insufficient additional evidence of causation, Plaintiff would be unable to establish a prima facie case as to the October 6, 2000 letter of warning. Even if Plaintiff could demonstrate a prima facie case, Defendant has offered a legitimate business reason for the letter in that he believed Plaintiff had engaged in unsafe driving practices. Plaintiff is unable to met his burden of showing pretext because he offered no evidence tending to show that Defendant's stated reason for issuing the October 6, 2000 letter of warning was unworthy of belief, inconsistent with agency procedures or practice, or was otherwise pretextual.

charge, the retaliatory act ordinarily will not be reasonably related to the charge. *Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F. 3d 1321, 1330 (10th Cir. 1999) (*citing Seymore*, 111 F. 3d at 799). The retaliatory acts that occurred before August 24, 1998 and were not included in the EEO charge are not properly before the Court because Plaintiff failed to exhaust administrative remedies with respect to those claims.

**B.      Whether Plaintiff can establish a that he was subjected to unlawful retaliation.**

Plaintiff has presented no direct evidence of retaliation and must therefore rely on burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973). *See Pastran v. K-Mart Corp.*, 210 F. 3d at 1205. Plaintiff bears the initial burden of establishing a prima facie case of retaliation. *Pastran*, 210 F. 3d at 1206. "If a prima facie case is established, the burden of production shifts, and the defendant must articulate a legitimate, non-discriminatory reason for the adverse action." *Purrington v. Univ. of Utah*, 996 F. 2d 1025, 1033 (10th Cir.1993). Once Defendant has articulated a non-discriminatory reason for the action, then the burden shifts back to Plaintiff to show that the asserted reason is pretextual. *Pastran*, 210 F. 3d at 1206.

**1.      Whether Plaintiff can establish a prima facie case of retaliation.**

In order to establish a prima facie case of retaliation under Title VII, Plaintiff must show that "(1) he engaged in protected opposition to discrimination, (2) his employer subjected him to an adverse employment action subsequent to the protected activity, and (3) a causal connection exists between the protected activity and the adverse employment action." *Pastran*, 210 F. 3d at 1205. Plaintiff bears the initial burden of establishing a prima facie case by a preponderance of the evidence. *Perry v. Woodward*, 199 F. 3d 1126, 1135 (10th Cir. 1999); *McCue v. Kansas Dep't of Human Resources*, 165 F. 3d 784, 789 (10th Cir.1999)). While it is undisputed that Plaintiff engaged in

protected activity by filing his August 24, 1998 and July 29, 1999 EEO charges, Defendant contends that Plaintiff has failed to establish the second and third components of his prima facie case.

Specifically, Defendant argues that any prohibition on making and receiving telephone calls at work, from entering the facility on his days off, from taking breaks while casing mail, requiring Plaintiff to document his sick leave, being informed that mail had been mis-delivered, assignment of personal monitor, counting and street observations, accusations of unsafe practices, modification of the delivery route, and the May 3, 1999 letter of warning concerning time wasting practices are not adverse employment actions and therefore do not satisfy the second element of the prima facie case.

The Supreme Court has defined an "adverse employment action" as one that "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). The Tenth Circuit liberally interprets the term "adverse employment action" and takes a case-by-case approach in determining whether a given employment action is "'adverse." *Jeffries v. Kansas*, 147 F. 3d 1220, 1231-32 (10th Cir.1998). The threshold for showing adverse employment action is not particularly high. For instance, in *Gunnell v. Utah Valley State College*, 152 F. 3d 1253 (10th Cir. 1998), the Tenth Circuit found that co-worker hostility and harassment, if sufficiently severe, qualified as an adverse employment action. *Id.* at 1264. In *Berry v. Stevinson Chevrolet*, 74 F. 3d 980 (10th Cir.1996), malicious prosecution qualified as an adverse employment action. *Id.* at 986-87. Similarly, in *Connor v. Schnuck Markets, Inc.*, 121 F. 3d 1390, 1395 (10th Cir. 1997), negative evaluations were sufficient to satisfy the second element of the prima facie case. *Id.* at 1395. In *Sauers v. Salt Lake County*, 1 F. 3d 1122, 1128 (10th Cir. 1993), reassignment to a different office over plaintiff's objections was sufficient to

establish and adverse employment action.

However, "not everything that makes an employee unhappy" qualifies as an adverse employment action under Title VII. *Sanchez v. Denver Pub. Sch.*, 164 F. 3d 527, 533 (10th Cir.1998) (*quoting Robinson v. City of Pittsburgh*, 120 F. 3d 1286, 1301 (3d Cir.1997) (*quoting Smart v. Ball State Univ.*, 89 F. 3d 437, 441 (7th Cir.1996)). "Mere inconvenience or an alteration of job responsibilities" do not qualify adverse employment actions. *Sanchez v. Denver Pub. Schs.*, 164 F. 3d at 532 (internal quotation marks omitted). Likewise, unrealized threats and tense personal relationships do not rise to the level of actionable retaliation. *Cole v. Ruidoso Mun. Sch.*, 43 F. 3d 1373, 1381 (10th Cir. 1994). Monitoring an employee's phone calls, moving her desk, acting in a chilly manner towards the employee, refusing to investigate her complaints, and suggesting that the employee transfer do not qualify as adverse actions. *Heno v. Sprint/United Management Co.*, 208 F. 3d 847, 857 (10th Cir. 2000). Conduct is retaliatory only "if it alters the employee's 'compensation, terms, conditions or privileges of employment" or "adversely affect[s] his [or her] status as an employee.'" *Sanchez*, 164 F. 3d at 533 (*quoting Robinson v. City of Pittsburgh*, 120 F. 3d at 1301; *quoting Smart*, 89 F. 3d at 441).

Plaintiff alleges several minor inconveniences that do not qualify as adverse employment actions under Tenth Circuit authority, two of which are also unsupported by the facts. First, the phone call claim fails on the uncontroverted facts. Plaintiff states that on August 22, 1999 and April 12, 2000, Tomas prohibited him from making or receiving phone calls while at work. (Pl. Ans. to Interrogatory No. 7.) However, Plaintiff testified that he had no recollection of incidents where he was denied use of the telephone and does not know if he was prevented from receiving a call. (Pl. Depo. at 78-80.) Defendant has established that Plaintiff was not at work on August 22, 1999 or

April 12, 2000. (Tomas Decl.¶ 15.) Defendant satisfied his summary judgment burden by identifying a lack of evidence supporting Plaintiff's claim. *See Adler*, 144 F. 3d at 671. The burden then shifted to Plaintiff to demonstrate a genuine issue for trial on a material matter. *See McGarry*, 175 F. 3d at 1201. Plaintiff could not have been barred from making phone calls at work on days that he was not at work. There is no genuine issue as to any material fact as to the claim. Defendant is entitled to summary judgment on Plaintiff's claim that Defendant retaliated against him that Defendant retaliated against him by prohibiting him from making or receiving phone calls while at work.

The personal monitor claim also is unsupported by the undisputed facts. Plaintiff alleges in his Complaint that a personal monitor was assigned to "watch his every move." However, Plaintiff does not dispute that Nuñez observed him on only one specific occasion. (Def. Uncontroverted Fact, ¶ 19; Nuñez Depo. at 8-9 and 19.) Defendant satisfied his summary judgment burden by identifying a lack of evidence supporting Plaintiff's claim. *See Adler*, 144 F. 3d at 671. The burden then shifted to Plaintiff to demonstrate a genuine issue for trial on a material matter. *See McGarry*, 175 F. 3d at 1201. Plaintiff failed to produce any evidence that Nuñez's observation interfered with his work, or that Plaintiff was somehow adversely affected by the incident. Nuñez's observation of Plaintiff performing his job does not rise to the level of an adverse employment action. *See Heno*, 208 F. 3d at 857. Defendant is entitled to summary judgment on Plaintiff's personal monitor claim.

In any event, the inconveniences put forth by Plaintiff do not qualify as adverse employment actions. Prohibitions on making and receiving telephone calls at work, observation by a supervisor, denial of schedule change requests, prevention from entering the workplace on days off, denial of breaks while casing mail, requiring Plaintiff to document his sick leave, and being informed that mail was mis-delivered did not alter the terms and conditions of Plaintiff's employment and consequently

do amount to adverse employment actions as a matter of law. *See Sanchez*, 164 F. 3d at 533. Plaintiff has failed to establish the second element of his prima facie case with respect to these minor inconveniences.

Street observations and counting of mail also do not rise to the level of adverse employment actions. Plaintiff's mail was counted and he was observed delivering his route in April 1999. (Def. Uncontroverted Fact, ¶ 14; Tomas Decl.¶ 12.) Plaintiff does not dispute that mail counts are conducted to balance daily workloads for delivery routes and that street observations are performed for safety purposes. (Def. Uncontroverted Facts, ¶ 29, 32; Tomas Decl.¶ 8, 11.) Mail counts and street observations are not imposed as discipline. (Def. Uncontroverted Facts, ¶¶ 31, 33; Tomas Decl.¶¶ 10, 11.) Plaintiff does not contend that he was the only carrier whose mail was counted, but asserts that he was the only carrier observed on the street during 1999.

Defendant has submitted evidence that other Roswell carriers were routinely observed in 1999. (Tomas Decl.¶ 11; Def. Ex. A.) In Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, Defendant has submitted the Declaration of Supervisor Robert Pantoja, stating that most if not all Roswell carriers were observed in 1999, and that Plaintiff was not subjected to the greatest number of observations compared to the rest of the letter carriers working out of the Roswell Post Office. (Def.'s Ex. A.) Defendant attached copies of PS Forms 4584-Observation of Driving Practices to the Pantoja Declaration, recording street observations of at least twenty-six other Roswell letter carriers in 1999. (*Id.*)

In response, Plaintiff has submitted the affidavit of Tom Nichols, a letter carrier and union official at the Roswell Post Office. (Pl. Ex. 3.) Nichols states that in 1999, no employee other than Plaintiff had been subjected to street observations based on the absence of Forms 4584 from folders

18

related to carrier routes. (Pl. Ex. 3, ¶ 11.)

Defendant moves to strike paragraph 11 of the affidavit of Tom Nichols, arguing that the statement is not based upon personal knowledge, is hearsay, conflicts with Nichols' deposition testimony, and is not the best evidence of the extent that carriers were observed in 1999. Rule 56 provides that a court must consider "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . ." *See* FED. R. CIV. P. 56 (c). Only admissible evidence may be considered by a court when ruling on a motion for summary judgment. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F. 2d 1467, 1474 (10th Cir. 1985). Affidavits submitted under Rule 56(e) must be based on personal knowledge, set forth such facts as would be admissible in evidence, and affirmatively show that the affiant is competent to testify as to the subject matter. *See* FED. R. CIV. P. 56 (e). Materials that do not measure up to the standards of Rule 56 are subject to a motion to strike. *See Noblett v. General Elec. Credit Corp.*, 400 F. 2d 442, 445 (10th Cir.1968).

Paragraph 11 of the Nichols affidavit is based on the absence of Forms 4584 in the folders of other letter carriers. Nichols offered no foundational facts as to the nature and contents of these folders. It does not follow from the facts recited by Nichols that Plaintiff was the only letter carrier observed in 1999. To the extent that the Nichols affidavit states that no other employee was observed in 1999, the statement is not based upon personal knowledge and does not affirmatively show that the Nichols is competent to testify as to the subject matter. Defendant's motion to strike Paragraph 11 of the Nichols Affidavit shall be granted. In the absence of Nichols' statement to the contrary, the record establishes that the street observations were conducted in a routine manner in accordance with Defendant's policy and were not undertaken in retaliation for Plaintiff's filing of his EEO charge.

Plaintiff does not dispute that the mail of other Roswell letter carriers was also counted. While employer actions that "can have an adverse impact on future employment opportunities" are legitimately regarded as adverse employment actions, *Berry v. Stevinson Chevrolet*, 74 F. 3d 980, 987 (10th Cir.1996), Plaintiff has made no showing that the street observations and mail counting had any adverse impact on his employment, future or otherwise. Under the facts of this case, Defendant's performance of supervisory functions did not rise to the level of adverse employment actions. Plaintiff has failed to establish the second element of his prima facie case with respect to the street observations and mail counting.

Defendant argues that the modification of Plaintiff's delivery route does not qualify as an adverse employment action. I agree. Tomas adjusted Plaintiff's route because it was slightly under seven hours per day. (Def. Uncontroverted Facts, ¶ 14; Tomas Decl.¶¶ 12.) Tomas assigned Plaintiff a portion of another carrier's territory to balance out the workload. (Def. Uncontroverted Fact, ¶ 15; Tomas Decl.¶ 12.) Tomas also requiring Plaintiff to park his vehicle and deliver the mail on foot because that method was more efficient. (Def. Uncontroverted Fact, ¶ 16; Tomas Decl.¶ 12.)

A minor alteration of job responsibilities alone is not an adverse employment action. *See Sanchez*, 164 F. 3d at 532. Only reassignments resulting in significantly different responsibilities qualify as adverse employment actions. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. at 761. The Tenth Circuit has indicated that job modifications qualify as adverse employment actions if they can have an adverse impact on future employment opportunities. *Roberts v. Roadway Express, Inc.*, 149 F. 3d 1098, 1104 (10th Cir.1998). Plaintiff has adduced no evidence indicating that the modification of his delivery route adversely affected his employment or resulted in significantly different responsibilities. Indeed, with the exception of the May 3, 1999 letter of warning addressing time

wasting practices, all of the letters of warning and disciplinary actions taken against plaintiff concerned insubordination or unsafe driving practices. Plaintiff does not explain how the modification of his delivery route adversely affected his employment. Because the modification of the delivery route did not significantly change Plaintiff's employment status and did not result in reassignment with significantly different responsibilities, the modification of the delivery route was not an adverse action.

Defendant argues that the May 3, 1999 letter of warning concerning time wasting practices was not an adverse employment action because it resulted in an official discussion, rather than more severe discipline. "Actions such as suspensions or terminations are by their nature adverse, even if subsequently withdrawn." *Roberts*, 149 F. 3d at 1104. While verbal reprimands are not generally considered adverse actions, *Sanchez*, 164 F. 3d. at 534, written warnings qualify as adverse employment actions only if they can have an adverse impact on future employment opportunities. *Roberts*, 149 F. 3d at 1104. The May 3, 1999 letter of warning concerning time wasting practices qualifies as adverse employment action even though it resulted in an official discussion. Plaintiff has met his burden as to the second element of his prima facie case as to the letters of warning.

Plaintiff must also demonstrate the third element of his *prima facie* case; a causal connection between his charge of discrimination and the adverse action. "A causal connection may be shown by 'evidence of circumstances that justify an inference of retaliatory motive, such as protected conduct closely followed by adverse action.' " *O'Neal v. Ferguson Constr. Co.*, 237 F. 3d 1248, 1253 (10th Cir.2001) (*quoting Burrus v. United Tel. of Kans. Inc.*, 683 F. 2d 339, 343 (10th Cir.1982)); *Chávez v. City of Arvada*, 88 F. 3d 861, 866 (10th Cir.1996). "Unless there is very close temporal proximity between the protected activity and the retaliatory conduct, the plaintiff must offer additional evidence

to establish causation." *O'Neal*, 237 F. 3d at 1253.

The Supreme Court recently observed that cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be "very close." *Breeden*, 532 U.S. 268, 273 (2001) (*citing O'Neal,* 237 F. 3d at 1253). The Tenth Circuit has held that a one and one-half month period between protected activity and adverse action may, by itself, establish causation, but that a three-month period, standing alone, is insufficient. *See O'Neal*, 237 F. 3d at 1253.

The eight months between Plaintiff's August 1998 removal and March 20, 1999 return to work will not be included in the temporal proximity analysis because Plaintiff was absent from the workplace during that period. The May 3, 1999 letters of warning were issued within two months of Plaintiff's return to work. The temporal proximity between Plaintiff's March 20, 1999 return to work and the May 3, 1999 letters of warning action is sufficiently close to satisfy the third element of Plaintiff's prima facie case. *See O'Neal*, 237 F. 3d at 1253. Plaintiff has demonstrated a prima facie case with respect to the May 3, 1999 letters of warning.

Tomas issued Plaintiff a letter of warning on June 1, 2000, based on Plaintiff carrying a tray of mail in an unsafe manner on April 27, 2000. (Def. Ex. 1.) The June 1, 2000 letter of warning was issued ten months after Plaintiff filed his July 29, 1999 EEO charge. The ten month period between the protected activity and June 1, 2000 letter of warning is too long to satisfy the causation component of Plaintiff's prima facie case based on temporal proximity alone. *See O'Neal*, 237 F. 3d at 1253.

"Unless the [adverse action] is very closely connected in time to the protected conduct, the

plaintiff will need to rely on additional evidence beyond mere temporal proximity to establish causation." *Conner v. Schnuck Markets*, 121 F. 3d 1390, 1395 (10th Cir.1997); *see also Marx v. Schnuck Markets*, 76 F. 3d 324, 329 (10th Cir.1996). Plaintiff attempts to bridge the causation gap by pointing out that Tomas issued the letter of warning to Plaintiff within two months of Tomas providing an affidavit on Plaintiff's EEO charge. (Pl. Response to Def.'s Mot. for Summ J. at 12-13.) Action by a defendant on an EEO claim is not a protected activity of the employee under 42 U.S.C. § 2000e-3(a). *See Clark County Sch. Dist. v. Breeden*, 532 U.S. at 273 (stating that the argument that an EEOC right-to-sue letter is a protected activity under Title VII is "utterly implausible"). Tomas' affidavit does not serve to shorten the time between the July 29, 1999 protected activity and the June 1, 2000 letter of warning. Plaintiff must therefore rely on additional evidence beyond temporal proximity.

Plaintiff contends that Ortega and Tomas engaged in a pattern of retaliatory conduct to force Plaintiff out of his job. (Pl. Response to Def.'s Mot. for Summ. J. at 12-13.) The only evidence cited by Plaintiff in support of the alleged pattern of retaliatory conduct are the street observations, the June 1, 2000 and October 6, 2000 letters or warning, the fact that the arbitrator found Ortega was not credible as to the events of September 28, 2000, and that Tomas raised his voice during the April 27, 2001 confrontation. I have already determined that the street observations do not qualify as retaliatory conduct because they are not adverse action. The finding by the arbitrator regarding Ortega's credibility is not probative of a retaliatory pattern. Tomas' conduct during the April 27, 2001 confrontation is not germane to a pattern of retaliation. Plaintiff's allegations concerning a pattern of retaliatory conduct are insufficient to establish causation with respect to the June 1, 2000 letter of warning. Plaintiff has failed to demonstrate a prima facie case with respect to the June 1,

2000 letter of warning.

> **2.** **Whether Defendant had a legitimate, non-discriminatory business reasons for its treatment of Plaintiff.**

If a prima facie case is established, the burden of production shifts, and the defendant must articulate a legitimate, non-discriminatory reason for the adverse action." *Purrington*, 996 F. 2d at 1033. The Supreme Court has recently reiterated that "[t]his burden is one of production, not persuasion ." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once Plaintiff made a prima facie showing of retaliation as to the May 3, 1999 letters of warning, the burden shifted to Defendant to articulate a legitimate, non-discriminatory reason for the issuance of the letters.

Defendant claims that Rymer issued the letters of warning because he observed Plaintiff run a stop sign and waste time on his route. Defendant has articulated legitimate business reasons for issuing the May 3, 1999 letters of warning.

Although Plaintiff failed to establish a *prima facie* case as to the modification of his delivery route and the June 1, 2000 letter of warning, I have determined that these claims would not survive the balance of the *McDonnell Douglas* analysis. Defendant modified Plaintiff's delivery route because it was under seven hours and letter carriers are required to work an eight hour day. In order to balance the workload, Plaintiff was assigned territory from another carrier's whose route was just over eight hours. Defendant had a legitimate business reason for modifying Plaintiff's delivery route. Tomas issued the June 1, 2000 letter of warning because Plaintiff violated safety rules when he grasped a falling tray of mail, thereby injuring himself. Defendant has met its burden of production with respect to showing a non-discriminatory business reason for its actions. The burden now shifts back to Plaintiff to establish pretext.

### 3.      Whether Plaintiff has established pretext.

A plaintiff can show pretext by revealing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder could rationally find them unworthy of credence." *Morgan v. Hilti, Inc.*, 108 F. 3d 1319, 1323 (10th Cir. 1997) (quotations omitted). However, "mere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." *Branson*, 853 F. 2d at 772. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves*, 530 U.S. at 148.

The plaintiff must establish "that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Reeves*, 530 U.S. at 143. A plaintiff demonstrates pretext by showing "either that a discriminatory reason more likely motivated the employer or . . . that the employer's proffered explanation is unworthy of credence." *Bullington v. United Air Lines, Inc.*, 186 F. 3d 1301, 1317 (10th Cir. 1999) (*citing Burdine*, 450 U.S. at 256). One way to show pretext is to provide evidence that the defendant's reasons are unworthy of belief. *Goodwin v. General Motors Corp.*, 275 F. 2d 1005, 1013 (10th Cir. 2002). Another way to show pretext is with evidence that the defendant acted contrary to a written company policy prescribing the action to be taken by defendant under the circumstances. *Kendrick v. Penske Transp. Servs. Inc.*, 220 F. 3d 1220, 1230 (10th Cir. 2000) (post-*Reeves* case). Yet another way pretext may be shown is with evidence that the defendant acted contrary to an unwritten policy or practice when making the adverse employment decision affecting the plaintiff. *Id.* The plaintiff "may not be forced to pursue any particular means of demonstrating that [a defendant's] stated reasons are pretextual." *Kendrick*,

220 F. 3d at 1230 (*quoting Patterson v. McLean Credit Union*, 491 U.S. 164, 187-88 (1989)).

When assessing a contention of pretext, it is the manager's perception of the employee's performance, and not the employee's subjective evaluation of his performance, that is relevant. *Shorter v. ICG Holdings, Inc.*, 188 F. 3d 1204, 1209 (10th Cir.1999). The court may not second guess the business judgment of the employer. *Simms v. Oklahoma ex rel. Dept. of Mental Health & Substance Abuse Servs.*, 165 F. 3d 1321, 1330 (10th Cir. 1999). After viewing plaintiff's evidence as part of the record as a whole, if a rational juror could infer that the actions were of a retaliatory nature, then the plaintiff has established pretext. *Ortiz v. Norton*, 254 F. 3d 889, 898 (10th Cir. 2001).

Plaintiff has presented no evidence tending to show that Defendant's proffered reasons for issuing the May 3, 1999 letters of warning failing are a pretext for retaliation. On the contrary, Plaintiff admits that he ran the stop sign and has not refuted the allegations of time wasting practices. Plaintiff has made no showing that Defendant's stated reasons are unworthy of belief, that Defendant acted contrary to a policy or practice, that other letter carriers were treated more favorably for engaging in similar infractions, or any other evidence supporting his claim of show pretext.

Plaintiff has also presented no evidence that Defendant's proffered reasons for the route modification or the June 1, 2000 letter of warning were a pretext for retaliation. Plaintiff failed to submit any evidence that Tomas acted contrary to Defendant's policy or practice in modifying the route, that other letter carriers were permitted to work less than eight hours a day, or that the proffered reason for the modification was somehow false. Plaintiff has submitted no evidence tending to show that the June 1, 2000 letter of warning was pretextual.

After viewing Plaintiff's evidence as part of the record as a whole, no rational juror could infer

that Defendant's actions were retaliatory in nature. *See Ortiz v. Norton*, 254 F. 3d at 898. Plaintiff has failed to meet his burden of showing that Defendant's asserted reasons for the adverse actions were pretextual. Accordingly, Defendant's motion for summary judgment should be granted.

**IV.     Conclusion.**

Upon review of the evidence presented on this Motion for Summary Judgment, the Court has determined that Defendant's Motion for Summary Judgment (Doc. 40), filed May 1, 2002, should be **GRANTED.**

**WHEREFORE,**

**IT IS ORDERED** that Defendant's Motion for Summary Judgment (Doc. 40), filed May 1, 2002, is **GRANTED.**

**IT IS FURTHER ORDERED** that summary judgment shall issue in favor of Defendant.

**A SUMMARY JUDGMENT CONSISTENT WITH THIS OPINION SHALL ISSUE.**

_____
**LESLIE C. SMITH**
**UNITED STATES MAGISTRATE JUDGE**